UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Grand Jury B-22-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:24CR 56 (SVN) (SDV) |
| v. | |
| HAMED GHORBANI-MOGHADDAM | VIOLATIONS:<br>18 U.S.C. § 371 (Conspiracy to Violate the Anti-Kickback Statute)<br>42 U.S.C. § 1320a-7b(b)(2)(A) (Offering or Paying Health Care Kickbacks) |

### INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Conspiracy to Violate the Anti-Kickback Statute)

### Background

Unless otherwise indicated, at all times relevant to this Indictment:

1. The Connecticut Department of Social Services provided medical assistance to low-income persons through the Connecticut Medical Assistance Program (CTMAP). CTMAP's benefit packages, referred to as "HUSKY" or "Connecticut Medicaid," were jointly funded by the State of Connecticut and the federal government. Participating health care providers submitted claims for reimbursement for medically necessary benefits, items, and services rendered to Connecticut Medicaid members. As such, this program was a "health care benefit program" under Title 18, United States Code, Section 24(b).

2. Individuals who received benefits under Connecticut Medicaid were called "beneficiaries" or "recipients." Companies or individuals that enrolled in Connecticut Medicaid and provided covered medical services, including dental services, to beneficiaries were known as "providers." To become a provider, a company or individual had to submit an enrollment

application and certify, among other things, that the provider agreed to abide by all federal and local laws, regulations, and program manuals applicable to providers. To obtain payment for services to beneficiaries, providers submitted and caused to be submitted claims to Connecticut Medicaid. These claims included, among other information, the beneficiary's name, the service provided, the date of service, the medical professional who rendered the service or item, and the amount of money claimed by the provider for the service or item provided.

3. It is and was a violation of the Anti-Kickback Statute, Title 42, United States Code, Section 1320a-7b, to knowingly and willfully offer, pay, solicit, or receive any remuneration (including any kickback or bribe) in exchange for, among other things, referring any individual for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care benefit program, including Connecticut Medicaid.

4. Since in or about 2014, defendant HAMED GHORBANI-MOGHADDAM ("GHORBANI") has been a licensed dentist in Connecticut. Since in or about April 2014, GHORBANI has been enrolled as a dental provider in CTMAP.

5. From approximately in or about August 2016 to in or about December 2017, GHORBANI worked with another dentist at a practice in Bridgeport, Connecticut. That practice was enrolled as a billing provider in CTMAP.

6. On or about December 5, 2017, GHORBANI established MGM Family Dental LLC ("MGM"), located in Bridgeport, Connecticut. On or about January 1, 2018, MGM enrolled as a billing provider in CTMAP. MGM continued as a participating provider in CTMAP through January 14, 2024.

7. Jeffrey Malave ("Malave") was the principal and agent of ASAPS, LLC ("ASAPS"), a business registered with the state of Connecticut in or about January 2016. Malave

and ASAPS never sought or received approval by CTMAP to provide any Connecticut Medicaid services, including Medicaid Non-Emergency Medical Transportation. As described more fully below, Malave recruited patients to receive dental services and items from GHORBANI that could be reimbursed through Connecticut Medicaid, in exchange for a portion of those reimbursements.

The Conspiracy and its Objects

8. Beginning in or about October 2017 and ending in or about April 2023, in the District of Connecticut, GHORBANI knowingly and willfully conspired, confederated and agreed with third-party patient recruiters, including Malave and other persons known and unknown to the Grand Jury, to commit an offense against the United States, to wit, to knowingly and willfully offer and pay remuneration, including kickbacks, bribes and rebates, directly and indirectly, overtly and covertly, in cash and in kind:

    a. to Malave and other recruiters, to induce such recruiters to refer individuals to GHORBANI for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), that is, Connecticut Medicaid, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

    b. to dental patients to induce those patients to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), that is, Connecticut Medicaid, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(B).

Manner and Means

The manner and means by which GHORBANI, Malave, and others sought to and did accomplish the objectives of the conspiracy included the following, among others:

9. GHORBANI arranged a scheme with Malave whereby Malave agreed to recruit Connecticut Medicaid beneficiaries to attend dental appointments with GHORBANI to receive dental services for which GHORBANI then billed Connecticut Medicaid. In exchange, GHORBANI agreed to pay and did pay Malave kickbacks.

10. Malave recruited Connecticut Medicaid beneficiaries using a variety of channels, including in person and via social media, advertising the payment of "cash" in exchange for beneficiaries attending dental appointments.

11. GHORBANI submitted claims to Connecticut Medicaid for the dental services provided to the Connecticut Medicaid beneficiaries recruited by Malave. After the beneficiaries' dental appointments, GHORBANI paid Malave kickbacks.

12. Malave, in turn, provided smaller kickbacks to beneficiaries via cash or electronic payments, with the knowledge of GHORBANI.

13. GHORBANI also worked with other patient recruiters, who agreed to recruit Connecticut Medicaid beneficiaries to attend dental appointments, in exchange for which GHORBANI agreed to pay and did pay kickbacks.

Overt Acts

14. In furtherance of the conspiracy and to achieve its purposes, GHORBANI and his co-conspirators, including Malave, committed the following overt acts, among others, in the District of Connecticut and elsewhere:

      a.      On or about February 13, 2018, January 17, 2020, and September 16, 2021, GHORBANI, on behalf of MGM, electronically signed CTMAP provider enrollment agreements, which contained the following language:

> Provider acknowledges and understands that the prohibitions set forth in state and federal law include, but are not limited to, the following: (a) false statements, claims, misrepresentations, concealment, failure to disclose and conversion of benefits; (b) any giving or seeking of kickbacks, rebates, or similar remuneration; (c) charging or receiving reimbursement in excess of that provided by the State; and (d) false statements or misrepresentation in order to qualify as a provider.

      b.      On or about March 9, 2020 and March 10, 2020, GHORBANI paid kickbacks in the total amount of approximately $3,682.22 to Malave to induce Malave to refer individuals to GHORBANI for the furnishing of dental services for which payment may be made under Connecticut Medicaid;

      c.      On or about May 26, 2020 and May 28, 2020, GHORBANI paid kickbacks in the total amount of approximately $4,475.06 to Malave to induce Malave to refer individuals, including Malave himself, to GHORBANI for the furnishing of dental services for which payment may be made under Connecticut Medicaid;

      d.      On or about August 2, 2021, August 9, 2021 and August 13, 2021, GHORBANI paid kickbacks in the total amount of approximately $5,353.38 to Malave to induce Malave to refer individuals to GHORBANI for the furnishing of dental services for which payment may be made under Connecticut Medicaid;

      e.      On or about October 29, 2021, November 8, 2021, and November 12, 2021, GHORBANI paid kickbacks in the total amount of approximately $6,551.75 to Malave to induce Malave to refer individuals to GHORBANI for the furnishing of dental services for which payment may be made under Connecticut Medicaid; and

f. On or about October 27, 2022, October 28, 2022, November 2, 2022, November 3, 2022, November 7, 2022, and November 9, 2022, GHORBANI paid kickbacks in the amount of approximately $8,457.73 to Malave to induce Malave to refer individuals to GHORBANI for the furnishing of dental services for which payment may be made under Connecticut Medicaid.

## COUNTS TWO THROUGH SIX
(Offering and Paying Health Care Kickbacks)

15. Paragraphs 1-14 are incorporated by reference.

16. Beginning in or about October 2017 and ending in or about April 2023, in the District of Connecticut, GHORBANI knowingly and willfully offered to pay and paid remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, to third-party patient recruiters, including Malave, to induce such recruiters to refer individuals to GHORBANI for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), that is, Connecticut Medicaid, as follows, the payment of each invoice (as revised or updated) representing a separate count of this indictment:

| Count | Approximate Total Kickback | Approximate Dates of Payment | Approximate Date(s) of Final Invoice |
|---|---|---|---|
| 2 | $3,682.22 | March 9, 2020<br>March 10, 2020 | March 6, 2020 |
| 3 | $4,475.06 | May 26, 2020<br>May 28, 2020 | May 23, 2020 |
| 4 | $5,353.38 | August 2, 2021<br>August 9, 2021<br>August 13, 2021 | August 9, 2021 |
| 5 | $6,551.75 | October 29, 2021<br>November 8, 2021<br>November 12, 2021 | November 12, 2021 |

| Count | Approximate Total Kickback | Approximate Dates of Payment | Approximate Date(s) of Final Invoice |
|---|---|---|---|
| 6 | $8,457.73 | October 27, 2022<br>October 28, 2022<br>November 2, 2022<br>November 3, 2022<br>November 7, 2022<br>November 9, 2022 | November 6, 2022 |

All in violation of Title 42, United States Code, Sections 1320a-7b(b)(2)(A).

## FORFEITURE ALLEGATION

17.     Upon conviction of the offenses alleged in Counts 1 6, defendant GHORBANI shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 42, United States Code, Section 1320a-7b, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

18.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

- 8 -

All in accordance with Title 18, United States Code, Section 982(a)(7); Title 21, United State Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/S/

FOREPERSON

UNITED STATES OF AMERICA

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

ELENA L. CORONADO
ASSISTANT UNITED STATES ATTORNEY